[970 NYS2d 807]

In the Matter of JOSEPH B. MILLER (Admitted as JOSEPH BARRY MILLER), an Attorney, Respondent. GRIEVANCE COMMITTEE FOR THE SECOND, ELEVENTH, AND THIRTEENTH JUDICIAL DISTRICTS, Petitioner.

Second Department, August 21, 2013

**APPEARANCES OF COUNSEL**

*Diana Maxfield Kearse,* Brooklyn (*Mark F. DeWan* of counsel), for petitioner.

*Joseph B. Miller,* Palm Beach Gardens, Florida, respondent pro se.

## OPINION OF THE COURT

Per Curiam.

On July 20, 2010, the respondent executed a guilty plea and consent to immediate disbarment in Florida. The Supreme Court of the State of Florida, by order dated September 15, 2010 (45 So 3d 462 [2010]), disbarred the respondent from the practice of law in that state, effective immediately, and directed the payment of $1,308 in costs to the Florida Bar. The order incorporated by reference the report of a Referee (hereinafter the Florida Referee), dated August 30, 2010, which was approved by the Florida court.

As revealed in the report of the Florida Referee, the respondent was suspended from the practice of law in that state on June 23, 2010, based upon his plea of guilty to conspiracy to commit wire and mail fraud, in violation of 18 USC § 1349, a federal felony, for his role in a fraudulent mortgage scheme. The respondent was recruited by others acting as coconspirators to act as a closing and title agent on various fraudulent loan transactions. Once a given loan was approved, the respondent's coconspirators caused the mortgage lenders to wire funds to the escrow account of the respondent, as closing agent, for purposes of funding the approved mortgage loans. The respondent agreed to divert loan proceeds to the personal accounts of the coconspirators without disclosing that fact to the mortgage lenders. To conceal the diversion, the respondent prepared two sets of

HUD-1 settlement statements: one that went to the lender showing the disbursements as ordered by the lender, and another that reflected a more accurate account of the disbursements. Fraudulent disbursements made in 2006 totaled over $700,000. The Florida Referee concluded in his report that the respondent violated Rules Regulating the Florida Bar rules 3-4.3 and 4-8.4 (b) and (c). The Florida Referee found no mitigating or aggravating factors, and recommended disbarment.

The respondent was sentenced on August 26, 2010, by the United States District Court for the Southern District of Florida, to a term of 18 months of imprisonment and three years of supervised release, and was directed to pay restitution in the sum of $669,271 (jointly with codefendants, payable at 10% of monthly gross income upon release from custody) and an assessment fee.

By executing the guilty plea and consent to immediate disbarment, the respondent admitted that he was the subject of a disciplinary proceeding instituted by the Florida Bar (file No. 2010-51,445[15F]). He admitted to the above allegations, including violation of the aforementioned rules. The respondent acknowledged that he was tendering the guilty plea and consent to immediate disbarment knowingly and voluntarily. Further, he agreed to cooperate with any future bar investigations that may be initiated relating to any claims that may be filed with the Florida Bar's Clients' Security Fund (hereinafter the Fund) and to make reasonable efforts to reimburse the Fund if it issues any payments to compensate the victims of his misconduct.

By notice dated February 1, 2011, the Grievance Committee for the Second, Eleventh, and Thirteenth Judicial Districts advised the respondent of his right to serve a verified statement setting forth any of the defenses to the imposition of reciprocal discipline as enumerated in 22 NYCRR 691.3 (c).

Following the respondent's release from prison, a hearing was held on May 17, 2012. The respondent appeared pro se.

At the hearing, both parties submitted documentary evidence. The respondent testified on his own behalf. He admitted that he consented to disbarment in Florida, and conceded that he must be disciplined by this Court. He did not dispute his plea of guilty, nor did he dispute any of the documentary evidence submitted by the Grievance Committee. He argued, however, that he should be suspended for a period consistent with his discipline in Florida, i.e., five years, since the Florida rules governing disbarred attorneys provide that an attorney may not apply for

reinstatement sooner than five years from the date of disbarment.

The respondent testified with regard to his personal background and his early release from prison. Remorseful and believing that he had already been punished enough, the respondent asked that his punishment in New York be no greater than it is in Florida. He claimed that, prior to his lapse in judgment, he had an "unblemished and untarnished" reputation. On cross-examination, the Grievance Committee elicited that the respondent did not have an unblemished record, but had been issued two admonitions, two letters of caution (one of which related to four separate complaints), and one dismissal with advisement. The Grievance Committee also elicited the fact that the respondent's plea agreement required him to voluntarily surrender his license to practice law in New York prior to sentencing, and that he had not done so yet.

The Special Referee found the respondent's testimony evasive and self-serving, and concluded that there was no merit to the defenses raised by the respondent. The Grievance Committee now moves to confirm the report of the Special Referee. The respondent opposes the motion in part insofar as he seeks the imposition of a term of suspension in lieu of disbarment. He does not claim that the Florida proceedings deprived him of due process. He does, however, claim that disbarment in New York would be excessive and unjust. The Supreme Court of Florida did not disbar the respondent for a specified period. Florida's rules governing disbarred attorneys merely provide that an application for reinstatement may not be made sooner than five years from the date of disbarment. The fact that the waiting period is seven years in New York does not make disbarment by way of reciprocal discipline excessive or unjust. We conclude that the evidence, including the mitigation evidence presented, does not warrant the imposition of a five-year period of suspension in lieu of disbarment.

Accordingly, the application to impose reciprocal discipline is granted, the motion to confirm the report is granted, and, effective immediately, the respondent is disbarred in New York based upon the discipline imposed on him in Florida.

MASTRO, J.P., RIVERA, SKELOS, DILLON and DICKERSON, JJ., concur.

Ordered that the petitioner's application to impose reciprocal discipline is granted; and it is further,

Ordered that the petitioner's motion to confirm the Special Referee's report is granted; and it is further,

Ordered that pursuant to 22 NYCRR 691.3, effective immediately, the respondent, Joseph B. Miller, admitted as Joseph Barry Miller, is disbarred, and his name is stricken from the roll of attorneys and counselors-at-law; and it is further,

Ordered that the respondent, Joseph B. Miller, admitted as Joseph Barry Miller, shall continue to comply with this Court's rules governing the conduct of disbarred, suspended, and resigned attorneys (*see* 22 NYCRR 691.10); and it is further,

Ordered that pursuant to Judiciary Law § 90, effective immediately, the respondent, Joseph B. Miller, admitted as Joseph Barry Miller, is commanded to continue to desist and refrain from (1) practicing law in any form, either as principal or as agent, clerk, or employee of another, (2) appearing as an attorney or counselor-at-law before any court, judge, justice, board, commission, or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law.

Ordered that if the respondent, Joseph B. Miller, admitted as Joseph Barry Miller, has been issued a secure pass by the Office of Court Administration, it shall be returned forthwith to the issuing agency, and the respondent shall certify to the same in his affidavit of compliance pursuant to 22 NYCRR 691.10 (f).